A. L. Kellogg, J.
The relator, William A. Johnson, was removed from the position of superintendent of water works of the city of Binghamton by the commissioner of public works of that city on the 1st day of January, 1920, and by reason thereof, prays that a writ of mandamus issue out of and under the seal of this court, directed to the officer last above mentioned, commanding and requiring him to reinstate the petitioner to the position from which he had been removed without cause and contrary to law.
The relator contends that after he had been examined and certified as eligible by the civil service board of the city of Binghamton, he was duly appointed to the position in question on the 20th day of March, 1918, and thereafter duly qualified and entered upon the discharge of his duties, and continued in the discharge of the same until he was removed.
He claims that his removal was unlawful, for the reason that at the time of his appointment as superintendent of water works, he was, ever since has been, and still is a volunteer fireman; that he served the time required by law in a volunteer fire department of the city of Binghamton, namely, the Alert Hose Company Ho. 2 of that city; that he became a member of said volunteer fire department on the 3d day of January, 1895, and continued as such until the 30th day of September, 1911, at which time said hose company was disbanded, and that he now is, and at all times has been entitled to all of the benefits, protection and immunity as such volunteer fireman as provided by law.
*467 Section 22 of the Civil Service Law, so far as it is applicable to the above contention of the relator, provides as follows:
“ Power of removal limited. Every person whose rights may be in any way prejudiced contrary to any of the provisions of this section shall be entitled to a writ of mandamus to remedy the wrong.
“ No person holding a position by appointment or employment in the state of New York or in the several cities, counties, towns _ or villages thereof who is * * * or who shall have served the term required by law in the volunteer fire department of any city, town or village in the state, or who shall have been a member thereof at the time of the disbandment of such volunteer fire department shall be removed from such position except for incompetency or misconduct shown after a hearing upon due notice upon stated charges, and with the right to such employee or appointee to a review by a writ of certiorari * * *. Nothing in this section shall be construed to apply to the position of private secretary, cashier or deputy of any official or department. ’ ’
It does not appear to be in dispute that prior to 1916, the water works of the city of Binghamton, and the employees thereof, were exempt from the provisions of the Civil Service Law and the rules and regulations adopted thereunder, for the reason that the water department of that city was a private corporation, it having been duly incorporated under a special act of the legislature, known as chapter 780 of the Laws of 1867, as amended by chapter 229 of the Laws of 1875.
That on the 1st day of January, 1916, the city of Binghamton, having become a city of the second class, the water department became a part of the department *468 of public works, and subject to the provisions of the Second Class Cities Law.
That thereafter, and sometime prior to the 11th day of October, 1917, the civil service commission of the city of Binghamton duly adopted a resolution placing the position of superintendent of water works in the competitive class of the classified service, and thereafter, and on or about the 11th day of October, 1917, the civil service commission of the state of New York duly approved of the resolution of the civil service commissioners of the city of Binghamton.
It is, therefore, the contention of the relator that the position in question is in the competitive class of the classified service of that city, under the title of “ superintendent of water works.” That for this reason it was not within the power of the superintendent of public works to remove him, in that, as a volunteer fireman, he was entitled to the protection of section 22 of the Civil Service Law.
Section 94 of the Second Class Cities Law is the statute which relates to water works in the cities of this class. It provides for the appointment of a superintendent of water works by the commissioner of public works as follows:
“ Water works. In case the city owns and operates a system of municipal water works, the commissioner of public works shall appoint, to hold office during Ms pleasure, a superintendent of water works, who shall have under the direction of the commissioner, the supervision, care, management and control of the water department and water works system of the city. ’ ’
Section 22 of the Civil Service Law was originally section 21 of that law, being chapter 370 of the Laws of 1899, and became a law on the nineteenth day of April of that year.
*469 Section 21, as it was originally enacted in 1899, contained the same provisions in regard to volunteer firemen as section 22 of the present law.
In 1909, at the time the Consolidated Laws were enacted, section 21 became section 22, and from that daté down to the present time there have been no amendments to this section of the Civil Service Law which in any way relate to exempt firemen.
Section 94 of chapter 473 of the Laws of 1906, the uniform charter of cities of the second class, is the same as section 94 which is contained in the present Second Class Cities Law. These laws were also consolidated with the Civil Service Law in 1909, and became effective in February of that year.
We, therefore, have the following situation: Section 21 (now section 22) of the Civil Service Law was in effect April 19, 1899. Section 94 of the Second Class Cities Law went into effect in 1906. Both laws, as they then existed, were consolidated in 1909, and went into effect without any change. No change has been made in section 94 of the Second Class Cities Law since consolidation, and no change has been made in section 22 (old section 21) of the Civil Service Law since the consolidation, except that made by chapter 264 of the Laws of 1910. This change related entirely to Spanish War veterans.
The relator claims the right to hold his position under section 22 of the Civil Service Law (in effect in 1899). The defendant, Arthur LaRoche, as commissioner of public works, claims he has the right to make a new appointment under section 94 of the Second Class Cities Law (in effect in 1906).
As has already been pointed out, section 94 of the Second Class Cities Law provides for the appointment by the commissioner of public works of a superintendent of water works to hold office during his *470 pleasure. By such act the legislature fixed the term of office of superintendent of water works during the pleasure of the appointing power, thereby authorizing the appointing' power to terminate the same at any time for any reason he chose.
This is clearly repugnant to and inconsistent with the limitation in section 22 of the Civil Service Law, which provides for continuation in office of any person holding a “ position ” which comes within the provisions thereof, until after a hearing upon stated charges upon due notice of incompetency or misconduct, with a right to review as to the sufficiency of the charges and evidence in support thereof.
The first question to be determined here is, which of these statutes is controlling. It is quite essential, therefore, to ascertain if possible the intent of the legislature.
The words “ during his pleasure ” in section 94 of the Second Class Citie/s Law must be given the meaning stated therein, else they are meaningless when considered with'section 22 of the Civil Service Law.
The provisions of section 22 of the Civil Service Law, so far as it relates to the superintendent of water works of the city of Binghamton, must be deemed to be repealed by implication by the later statute (Second Class Cities Law, § 94), as the repugnancy of the two sections is plain and unavoidable; and this must have been the legislative intent. People ex rel. McNeile v. Glynn, 128 App. Div. 257; Willard v. Pilcher, 92 Misc. Rep. 30; Report of Attorney-General, 1915, vol. 2, p. 8; Matter of Murray, 88 Misc. Rep. 625.
That it was the intent of the legislature that the superintendent of water works should hold office during the “ pleasure ” of the commissioner of public works as provided by section 94 of the Second Class *471 Cities Law 'seems apparent, when the language therein employed is compared with section 96 of the same statute, which relates to the appointment of superintendent of parks.
This section (96) provides as follows: “ Unless otherwise provided by law, the commissioner of public works shall appoint, to hold office during his pleasure, a superintendent of parks, etc. * * *” thus providing in so many wiords that while the superintendent of parks should hold office during the pleasure of the commissioner of public works, this power of removal must be considered in connection with other provisions of law. No such limitation is provided in section 94 of the Second Class Cities Law, wherein it states that the superintendent of water works shall hold office “ during the pleasure ” of the commissioner of public works.
For the purpose of ascertaining as to whether or not it was the intent of the legislature that section 22 of the Civil Service Law should not apply to the office of superintendent of public works, it is necessary to consider section 94 of the Second Class Cities Law, as well as sections 181, 189 and 190 of the supplemental charter of the city of Binghamton, which prescribe his powers and duties.
The section of the Second Class Cities Law referred to provides that the superintendent of water works, under the direction of the commissioner, shall have the supervision, care, management and control of the water department and water works system of the city.
Section 181 of the supplemental charter provides that the bureau of water shall constitute a bureau in the department of public works, and the chief officer thereof, subject to the commissioner of public works, shall be the superintendent of water wlorks.
By section 189 of the supplemental charter it is *472 made the duty of the superintendent of water works, apart from any direction or control of the commissioner of public works, to annually, on or before the first day of February in each year, cause to be prepared an assessment-roll of the frontage tax, which roll contains the names of all persons assessed, the street upon which the property assessed to each person is situated, the number of feet frontage assessed upon each piece of real estate, and computes and figures the amount of tax thereon. By the same section it is made his duty to maintain such roll in his office for ten days, and during that time to allow the roll to be inspected by all persons who are interested therein, and his further duty to remain during the last three days of said time to hear objections and to make corrections in the roll, and thereupon to publish due notice in the official paper of the depositing of said roll, the time and place of hearing objections to, and the making of corrections in said roll, and he for that purpose is given the same powers as are given assessors by law, in making corrections of the annual assessment-roll. This roll then becomes a tax roll of the city of Binghamton, and is, after it has been signed by the mayor and city clerk and delivered to the city treasurer, final and conclusive against all persons who are taxed or assessed thereon, and is a lien against the premises in the same manner as are other city taxes.
He has the power to discontinue the service of water to any resident of the city for unpaid water rents. He is also required, by section 190 of the supplemental charter, to send statements of all accounts of metered water to the owners iof premises liable therefor, and keep a separate account with the city treasurer of the amounts received and paid in each month for water rents, and of the amounts paid for maintaining and operating the said water works.
*473 It is also conceded, as a matter of fact, in this proceeding, that the superintendent of water works is in direct control of a very large number of employees, about 189 in number. Many of these employees are of major importance, and include chief clerk, deputy clerks, stenographer, foreman, storekeeper, inspectors, chief engineer, machinists, firemen, chemist, engineers and operators.
The superintendent of water works fixes the rate of pay of employees of the department within the limit set by the board of estimate and apportionment, and so far as the rate of pay of the employees is concerned, his decision is final.
A careful study of these various statutes referred to indicates the legislative intent to make the superintendent of water works of the city of Binghamton an officer having certain powers and duties which would make his office not a “ position ” within the meaning of the Civil Service Law. People ex rel. Fonda v. Morton, 148 N. Y. 156; People ex rel. Jacobus v. Van Wyck, 157 id. 495; Matter of Christey v. Cochrane, 211 id. 336.
The meaning of the word “ position ” in section 22 of the Civil Service Law has been repeatedly construed by the highest court in this state.
In People ex rel. Fonda v. Morton, supra, Andrews, Ch. J., in writing for the Court of Appeals said, in referring to the act respecting the employment of honorably discharged union soldiers and sailors: “ It was intended to create a privileged class entitled to preferential employment in subordinate positions in the public service, the foundation of the preference being meritorious service as soldiers and sailors in the war for the preservation of the union * * * The act applies to employees of every grade in the public service or on the public works of the state and the cities, *474 towns and villages thereof. The preference is given not only in clerical or other subordinate positions, but to every person seeking public employment as laborer on the canals or on the streets of a city, or in any capacity however humble * *
In commenting upon the opinion of Judge Andrews in People ex rel. Fonda, Chief Judge Parker, in People ex rel. Jacobus v. Van Wyck, supra, said: “ This interpretation of the statute is in accord with the general understanding of it, and is borne out by the title of the act, which is ‘An act respecting the employment of honorably discharged Union soldiers and sailors in the public service of the State of New York, relative to removals.’ ”
Continuing, Parker, Ch. J., said: “ Certainly the title does not suggest that public officers vested with discretion in the performance of their duties, subject to no direction, but on the contrary empowered to appoint clerks and other subordinates and fix their compensation, were intended to be affected by the statute, the purpose of which was stated in its title. And as the term ‘ position ’ that the statute makes use of is an indefinite one, and may include officers or be limited to cases of employees, it is proper to refer to the title of the statute to determine its scope and intent. Thus referring to the title, and according to it its proper weight, we readily perceive that the word ‘ position ’ in the connection in which it is used, is intended to embrace all subordinate places in the public service, and that the statute is limited in its operations to those engaged in the public employment, as that term is ordinarily used, which does not include the more important municipal offices.
“ So far as we have observed, the view taken by Chief Judge Andrews, that the veteran acts apply only to subordinate positions, is in harmony with all judicial *475 expression on the subject, and is not only justified but required by the statute when its provisions are read in connection with its title.
“ It will be difficult at times to determine whether a given position is a subordinate one or not, and possibly no rule can be laid down by which one class can always be readily distinguished from the other. But other cases need not be anticipated, as it is sufficient for our present purpose that there is no difficulty in determining that the position in question is not a subordinate one.”
The principles laid down in the Jacobus and Fonda cases are cited with approval in Matter of Christey v. Cochrane by Hogan, J., in writing for the Court of Appeals (211 N. Y. 336, 345) in which after a careful analysis of the duties of the office of auditor of the city of Buffalo, it was determined that the office was not a subordinate position, and that therefore the power of removal was lodged in the comptroller, notwithstanding the provisions of the Civil Service Law.
Taking into consideration these several statutes under discussion which relate to the appointment of a superintendent of water works by the commissioner of public works, his duties, the power he has to exercise, and the importance of their proper discharge to the latter officer, it is within the bounds of conservative reasoning for this court to hold that the superintendent of water works is not only a deputy, but occupies a confidential position in its truest sense in relation to the commissioner of public works. People ex rel. Cochrane v. Tracy, 35 App. Div. 265; People ex rel. Jones v. Baker, 12 Misc. Rep. 389; Matter of Ostrander, 12 id. 476; affd., 146 N. Y. 404; People ex rel. Crummey v. Palmer, 152 id. 219.
Haight, J.,
in writing for the Court of Appeals in People ex rel. Crummey v. Palmer, supra, said:
*476 “ What is a ‘ confidential relation ’ to the appointing officer? A complete definition may be difficult. We shall only attempt one in general terms. The meaning of ‘ confidential ’ has two elements, that of secrecy and that of trust and confidence. ‘ Confidential relation, ’ in law, as defined by the Century Dictionary, is a relation of parties, in which one is bound to act for the benefit of the other and can take no advantage to himself from his acts relating to the interest of the other. Such a relation arises whenever a continuous trust is reposed by one person in the skill or integrity of another. The statute which we have under consideration has reference to officials, and the confidential relations mentioned undoubtedly have reference to official acts, and include not only those that are secret, but those that involve trust and confidence which are personal to the appointing officer. If, therefore, the statute casts upon an officer a duty involving skill or integrity, and a liability either personal or on the part of the municipality which he represents, and he intrusts the discharge of this duty to another, their relations become confidential.” See, also, Chittenden v. Wurster, 152 N. Y. 360; People ex rel. Sweet v. Lyman, 157 id. 387; 2 Words & Phrases, 1422; 1 id. (2d series) 385.
I am, therefore, of the opinion that the superintendent of the water works of the city of Binghamton is not a “ subordinate position ” and that the power conferred by section 94 of the Second Class Cities Law to remove, without cause, the officer in question, is not limited by the provisions of section 22 of the Civil Service Law.
It follows that the writ requested herein must be denied.
Ordered accordingly.